Michael Kerh, J.
The defendant, charged in the Criminal Court of the City of New York with the misdemeanor of criminal possession of a dangerous drug in the fourth degree, moves this court for an order directing prosecution by indictment in the Supreme Court. The motion papers make it clear that the *679 defendant relies entirely upon the recent decision of the Supreme Court of the United States in Duncan v. Louisiana (391 U. S. 145, 149) which, in essence, held that “ Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which — were they to be tried in a federal court — would come within the Sixth Amendment guarantee.”
The Criminal Court of the City of New York is, by virtue of an act of the Legislature (L. 1962, ch. 697, eff. Sept. 1, 1962), the successor to the former Court of Special Sessions of the City of New York. It was long the law that jurisdiction to try misdemeanor charges in the City of New York was vested in either the Court of Special Sessions or, in a limited class of cases, in the Magistrates’ Court of the City of New York. Such jurisdiction was created by the Legislature under authority granted by section 18 of article VI of the State Constitution, which article contained a provision that ‘ ‘ In the exercise of such jurisdiction such courts may hear and determine such causes with or without a jury, except those involving a felony.” In the City of New York legislative provisions established the practice of trial by the court alone, without a jury, in misdemeanor cases. The Court of Appeals early held that such practice was constitutional and did not violate the right to jury trial preserved inviolate by section 2 of article I of the State Constitution (People v. Kaminsky, 208 N. Y. 389). Kaminsky has never been overruled and, indeed, has never been questioned until the very recent decision in Duncan (supra). The present motion is, of course, a claim sub silentio that insofar as the State Constitution provides for trial of misdemeanor cases without a jury, that constitutional provision itself violates the defendant’s rights under the Federal Constitution’s Sixth Amendment guarantee of the right to trial by jury. The provisions of section 19 of article VI were reincorporated in section 15 of article VI of the State Constitution effective January 1, 1962.
The precise question presented by this motion is whether or not Duncan (supra) compels this court to hold that, in fact and in law, a defendant prosecuted in the Criminal Court of the City of New York is by very virtue of such prosecution entitled to a trial by jury. In the solution of this question it is necessary to determine whether or not the facts in Duncan (supra) and those in the case at bar are so similar as to compel the conclusion that the ratio decidendi of Duncan is controlling in the present case.
*680 Duncan was prosecuted in a Louisiana coutt for the misdemeanor of simple battery, and upon conviction was sentenced to a term of imprisonment df 60 days. His preliminary and intermediate motion for trial by jury was denied because the Louisiana Constitution grants jury trials only in cases in which capital punishment or imprisonment at hard labor may be imposed. It is pertinent to Uote and, indeed crucial to this court’s determination, that although the sentence actually imposed upon Huncah was only for a term of imprisonment of 60 days, the governing statute permitted a term of imprisonment of up to two years.
The Supreme OoUrt, in holding that Duncan’s right to a jury trial under the Sixth Amendment to the Constitution had been violated, rejected Louisiana’s contention that it was the actual sentence imposed which controlled, and held that the hazard of the much more severe potential sentence of two years was the determinative consideration.
Section 220.05 of the revised Penal Law establishes the crime of criminal possession of a dangerous drug in the fourth degree and denominates that crime as a Class A misdemeanor for which section 70.15 imposes a maximum sentence of one year. The question presents itself: Does a statute which provides for a maximum sentence of one year fall within the ambit of Duncan i This court holds, as a matter of law, that it does not. Support for the court’s position is found in the statement by White, J. in the Duncan case (391 U. S. 145,160-161, supra): “ Of course, the boundaries of the petty offense category have always been ill-defined, if not ambulatory. Ih the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance. In either case, it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions. This process, although essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little.”
Mr. Justice White, continuing, pointed out that in 49 of the 50 States, crimes subject to trial without a jury are punishable by no more than one year in jail. The defendant contends, however, that notwithstanding the statutory maximum of otte year’s imprisonment, the court may impose incarceration of up to four years. He calls attention to the provisions of sections 70.15, 75.10 and 75.20 of the Penal Law by virtue of which the defend *681 ant, as a youth of an age falling between 16 and 21 years, may he sentenced to a reformatory for a period not exceeding four years. The question thus occurs: Is the provision under these statutes truly punitive or does it bave a different legislative purpose and a different legal consequence dictated by the legislative purpose! In this court’s view, the provision for a reformatory detention, even up to a period of four years, is not intended for and does not operate as a punitive sanction. Former article 7-A of the Correction Law provided that in cities which have established a reformatory, a defendant convicted of a misdemeanor could, in the discretion of the court, be committed to such reformatory for a period not exceeding three years. In a long series of cases the Court of Appeals established beyond question or cavil that the alternative commitment rested within the sound discretion of the court subject only to the limitation that if the defendant were “ mentally or physically incapable of being substantially benefited by the correction and reformatory purposes of the institution to which he is committed ” the court was compelled to impose the statutory penalty (in most instances one year). (People v. Thompson, 251 N. Y. 428; People v. Tower, 308 N. Y. 123; People ex rel. Kern v. Silberglitt, 4 N Y 2d 59; People v. Gross, 5 N Y 2d 131; People v. Wilson, 17 N Y 2d 40.) The Court of Appeals has made it clear, in these and other cases whose number is legion, that the reformative type of commitment was not imposed for purposes of punishment but for purposes of reformation. There is no question in this court’s mind that section 75.00 of the present Penal Law was enacted by the Legislature for identical purposes and under the impulsion of the sama philosophy. Indeed, the practice commentary under section 75.10 (McKinney’s Cons. Laws of N. Y., Book 39, p. 156) specifically states: “ In considering this uniform period it is important to remember that the purpose of a reformatory sentence is to provide education, moral guidance and vocational training for young offenders who are badly in need of such instruction and counsel.”
In fine, this court rules that the factual possibility of a four-year duration of a commitment of a defendant convicted of a misdemeanor does not alter the essential fact that the punitive provision of the statute extends only to a period of one year. This being so, the court holds, Duncan v. Louisiana (supra) is not controlling.
There is another consideration which compels the same conclusion. The State Constitution (art. VI) has vested in the Legislature the power to establish jurisdiction of the various criminal courts to try defendants for those types of crime which *682 the Legislature has created. It is true that the Supreme Court is a court of general jurisdiction. Nevertheless, the legislative intent that, with but few exceptions, all misdemeanors shall be tried in the Criminal Court of the City of New York is clear, and unless barred by some governing constitutional principle, is not to be modified by this court. Under section 31 of the former New York City Criminal Courts Act the Court of Special Sessions was vested with the practically exclusive jurisdiction to try misdemeanor charges. That power and jurisdiction has been carried forward in section 31 of the present New York City Criminal Court Act. Under the former act, the Court of Special Sessions was divested of this jurisdiction only if before the commencement of trial an order was made by a Justice of this court certifying “ that it is reasonable that such charge shall be prosecuted by indictment.” The same principle and the same rule are now contained in section 32 of the New York City Criminal Court Act; indeed, the language is identical with that of the former act. Under the original provision the issuance of such a certificate, while resting in the discretion of the Supreme Court, was justified only in cases presenting intricate questions of law or fact or cases (e.g., obscenity) in which it was desirable to have the issue decided on the basis of the mores of the entire community or in which the defendant’s property rights might be adversely affected by a judgment of conviction. It cannot be said that the case at bar presents any of these elements. For this court to make an order that the defendant be tried in this court by indictment would therefore be for this court to legislate in a province which is constitutionally solely that of the Legislature and, moreover, to legislate for reasons and purposes which the Legislature, and indeed this court, heretofore has uniformly refused to consider proper grounds.
Finally, it would, in the opinion of this court, be unseemly for the court to lay upon the statutory structure of the criminal law within the City of New York the stigma of unconstitutionality. The matter is of such great importance that such a pronouncement should be made, if at all, by the Court of Appeals. The consequences of a decision granting the defendant’s motion would be grave indeed. It is unnecessary to cite specific statistics; the court takes judicial notice of the fact that in the Criminal Court of the City of New York many thousands of cases are adjudicated each year without a trial by jury. Such a decision would cast doubt on the constitutional validity of thousands of judgments of conviction in cases previously tried. It would, in addition, seriously affect the ability of that court to expeditiously dispose of its huge backlog of cases now pend *683 ing. Moreover, it would create a chaotic if not impossible situation in the Supreme Court by the addition of many thousands of cases to its own calendar. This court is convinced that it is the point of wisdom, and indeed of utter necessity, that the merits of the defendant’s contention should be determined by the Court of Appeals (People v. Reed, 276 N. Y. 5). The defendant cannot be prejudiced by such a ruling, for it is reviewable on appeal from a judgment of conviction should one here ensue (Code Crim. Pro., § 517). On the other hand, the People would be seriously prejudiced. There exists for the People no right of appeal from an order granting the defendant’s motion (Code Crim. Pro., § 518). It is seriously doubtful for procedural reasons that the People would be able to employ the writ of prohibition as a method of review. As C'ardozo, J., said in Snyder v. Massachusetts (291 U. S. 97, 122): “ But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.”
For the foregoing reasons the motion is denied.